IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ESTELLA ARREZ and ERICA ALONSO, on Behalf of Themselves and All Other Persons Similarly Situated, Known and Unknown, | |
| Plaintiffs, | Case No. 07 C 1289 |
| | Hon. Harry D. Leinenweber |
| v. | |
| KELLY SERVICES, INC., | |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

Plaintiffs Estella Arrez and Erica Alonso (hereinafter, the "Plaintiffs"), bring this action under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* (the "IWPCA") and the Illinois Day and Temporary Labor Services Act, 820 ILCS 175/1 *et seq.* (the "IDTLSA"), on behalf of themselves and other persons who are or have been employed by Kelly Services, Inc. (hereinafter, the "Defendant" or "KSI") as temporary employees in Illinois and who (1) left Defendant's employ at any time during the five years prior to the filing of this action and who were not paid all earned vacation pay as part of their final compensation and/or (2) have been employed by Defendant at any time during the five years prior to the filing of this action and who have not been paid all earned holiday pay. Plaintiffs also allege that KSI failed to provide

proper Wage Payment and Notice required by the IDTLSA, 820 ILCS 175/30. Defendant KSI has moved to dismiss the Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs originally brought this action in state court, and Defendant removed to this Court pursuant to 28 U.S.C. §§ 1332 and 1441. Under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), this Court has jurisdiction over this action because the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," 28 U.S.C. § 1332(d)(2), and at least one member of the proposed class is a citizen of a State different from Defendant KSI.

For the following reasons, Defendant's motion is **denied.**

## I. BACKGROUND

The Court derives the following facts from the pleadings, including all attached documents. The Court resolves all reasonable inferences and factual conflicts in Plaintiffs' favor. Though the complaint contains class allegations, no class has yet been certified. Thus, the Court limits its discussion to the allegations of the named Plaintiffs.

At least since June 2003, when Plaintiff Alonso became employed with KSI, KSI has maintained a "Vacation Benefit Plan" for its temporary employees. This vacation pay policy provides, in relevant part:

> To qualify for a vacation benefit payment, you
> must meet all of the following criteria:
>
> • Work, and be paid for, 1,500 hours
>   within the vacation benefit year.
>   These hours must appear on paychecks
>   dated from January through December.
>
> • Be an active Kelly employee at the
>   end of the vacation benefit year
>   (*i.e.*, receive a paycheck dated in
>   December). . . .
>
> A vacation benefit payment will be issued
> automatically in January of the following
> year.  It will be equivalent to 40 hours at
> your average pay rate for the year.  Do **not**
> record vacation hours on your time card or
> other timekeeping systems. . . .
>
> The Vacation Benefit Plan may be cancelled or
> modified at any time at the discretion of
> Kelly Services.

Def.'s Mem. in Support of its Mot. to Dismiss ("Def.'s Mem."),

Ex. A.  At least since December 2005, when Plaintiff Arrez became

employed with KSI, KSI has maintained a "Holiday Benefit Plan" for

its temporary employees.  This holiday pay policy provides, in

relevant part:

> You may be eligible for as many as six paid
> holidays per year:  New Year's Day, Memorial
> Day, Independence Day, Labor Day, Thanksgiving
> Day, and Christmas Day.
>
> To qualify for a holiday benefit payment, you
> must meet all of the following requirements:
>
> • Work, and be paid for, 960 hours
>   during the 26 weeks immediately
>   prior to the holiday. . . .

- 3 -

- Work, and be paid for, 30 hours during the week immediately prior to the holiday week. For New Year's Day, however, work, and be paid for, 30 hours during the week immediately prior to Christmas Day.

- Be available to work during the holiday week.

A holiday benefit payment will be issued automatically the week following the holiday. It will be equivalent to eight hours to your current pay rate. Do **not** record holiday hours on your time card or other timekeeping systems.

The Holiday Benefit Plan may be cancelled or modified at any time at the discretion of Kelly Services.

Def.'s Mem., Ex. B. Defendant KSI maintained these vacation and holiday pay policies, or substantially similar policies, for at least five years prior to the filing of this action.

Plaintiff Arrez was employed by KSI from approximately December 2005 to October 2006. She was employed as a temporary worker, assigned to work as a laborer at a third-party client company, paid on an hourly basis, and treated as an employee for purposes of KSI's vacation and holiday policies. Arrez worked more than 1,500 hours for KSI in 2006, but, in accordance with KSI's Vacation Benefit Plan, she did not receive a vacation payment for her hours worked during calendar years 2005 and 2006. Arrez also met the conditions of KSI's Holiday Benefit Plan, but she was denied holiday pay in 2006.

Plaintiff Alonso was employed by KSI from approximately June 2003 to July 2004. Like Arrez, she was employed as a temporary worker, assigned to work at various third-party client companies, paid on an hourly basis, and treated as an employee for purposes of KSI's vacation and holiday policies. Alonso worked for KSI continuously between June 2003 and December 2003 and between January 2004 and July 2004, but in accordance with KSI's Vacation Policy, she did not receive a vacation payment for her hours worked during calendar years 2003 and 2004.

Since January 1, 2006, KSI did not provide Plaintiff Arrez with Wage Payment and Notice in the form of an itemized statement on her paycheck stub or form approved by the Illinois Department of Labor listing at least (a) the name, address, and telephone number of each third party client at which she worked, and (b) the number of hours she worked at each third party client each day during the pay period.

Count I of the Complaint alleges that KSI's vacation pay policy violates the IWPCA by, among other things, denying employees the right to have vacation time vest proportionally as they work and causing a forfeiture of vested vacation for employees who do not work in December of any calendar year. Plaintiffs allege that they have been denied earned or vested vacation pay throughout the course of their employment. Count II alleges that Plaintiff Arrez satisfied the conditions of KSI's holiday pay policy, but that KSI

failed to compensate her all of her earned holiday pay, in violation of the IWPCA. Count III alleges that KSI failed to provide Plaintiff Arrez with proper Wage and Payment Notice, in violation of the IDTLSA.

## II.  DISCUSSION

### A.  Vacation Pay Claim Under the IWPCA

The IWPCA provides that:

> Every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee. . . . Unless otherwise provided in a collective bargaining agreement, whenever a contract of employment or employment policy provides for paid vacations, and an employee resigns or is terminated without having taken all vacation time earned in accordance with such contract of employment or employment policy, the monetary equivalent of all earned vacation shall be paid to him or her as part of his or her final compensation at his or her final rate of pay and no employment contract or employment policy shall provide for forfeiture of earned vacation time upon separation.

820 ILCS 115/5. "Final compensation" is defined as "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties." 820 ILCS 115/2.

Defendant KSI argues that (1) its vacation pay policy does not enable employees to earn vacation pay proportionately as work is performed, and that employees must meet the 1,500 hour and active employment in December requirements before they "may be eligible for vacation benefits," Def.'s Mem. at 5; (2) since its vacation pay policy is an inducement for future services rather than compensation for past services, Plaintiffs could not have been deprived of any *earned* vacation benefit; and (3) the vacation benefit is actually a bonus to which Plaintiffs are not entitled because KSI's policy does not unequivocally confer such a benefit.

Plaintiffs respond, first, that under *Golden Bear Family Restaurants, Inc. v. Murray*, 494 N.E.2d 581 (Ill. App. Ct. 1986), and *Mueller Co. v. Department of Labor*, 543 N.E.2d 518 (Ill. App. Ct. 1989), employees earn vacation benefits pro rata where the employer's vacation policy provides for vacation accrued by length of service, and KSI's policy is a length-of-service plan. Second, Plaintiffs argue that KSI's policy clearly provides for a vacation benefit payment as compensation for past service because employees must meet the 1,500 hour requirement in a given year *before* a vacation benefit payment equivalent to 40 hours at the employee's average pay rate for the year will be issued in the January of the following year. Employees who are not paid this benefit after meeting these requirements are thus deprived of vacation pay they have earned through their service. Third, Plaintiffs argue that

KSI's vacation pay policy is not a bonus, and even if it were, bonuses based on length of service are earned pro rata.

The Court is convinced that KSI's vacation policy is a length-of-service plan and that the decisions of the Illinois appellate courts in *Golden Bear* and *Mueller* support Plaintiffs' position.  In *Golden Bear*, the defendant's vacation policy provided that accrued vacation pay would not be paid to employees terminated within the calendar year of accrual.  *Golden Bear*, 494 N.E.2d at 582.  The policy provided that employees were entitled to take earned vacation if they were on the payroll working a regular schedule on the Wednesday preceding January 1.  *Id.* at 583.  The two plaintiffs were terminated in October and December 1982 before the Wednesday preceding January 1, 1983, and they did not receive any vacation pay for the months they worked during 1982.  The Illinois Appellate Court held that under the IWPCA, employees earn vacation pay pro rata as service is rendered, and that a vacation policy that forfeits earned vacation pay unless employees were employed on a specific date violated Section 5 of the Act.  *Id.* at 588.  The court reasoned that "when an employee renders services to an employer, her right to receive the compensation that the employer promised vests as much as her right to receive wages or any other form of compensation.  The lack of a promise to vest does not revoke the employer's obligation to pay.  The employer must return those benefits that he derives from the continued labor of the

employee." *Id.*; *see also* Ill. Admin. Code tit. 56, § 300.520(a)
("Whenever an employment contract or an employment policy provides
for paid vacations earned by length of service, vacation time is
earned pro rata as the employee renders service to the employer.");
*People ex rel. Illinois Dept. of Labor v. General Elec. Co.*, 806
N.E.2d 1143 (Ill. App. Ct. 2004) (holding that GE's vacation policy
violated the IWPCA because it forfeited vacation pay benefits
earned through past service).

Here, KSI's Vacation Benefit Plan is clearly a length-of-
service plan: employees who work a certain number of hours in a
given year (and are actively employed in December) are
automatically issued a vacation benefit payment in January of the
following year. The fact that KSI's plan does not use the terms
"earned" or "accrued" does not mean that KSI's employees have not
earned the vacation benefit payment through their past service.
The plain terms and structure of the plan provide a vacation pay
benefit as compensation for service rendered. Thus, Defendants'
citation to *Prettyman v. Commonwealth Edison Co.*, 653 N.E.2d 65
(Ill. App. Ct. 1995), is unavailing because the employees in that
case were granted their entire vacation allowance for a given year
on January 1 of that year, *prior* to rendering services for the
year. The plaintiffs in *Prettyman* were not deprived of any earned
vacation, because at the time they were terminated in September
1992, they were paid for all their unused vacation days for 1992

even though they did not work through the end of the year. *Id.* at 69-70.

Furthermore, "'once it is acknowledged that vacation pay is not an inducement for future services, but is compensation for past services, the justification for demanding that employees remain for the entire year disappears. If some share of vacation pay is earned daily, it would be both inconsistent and inequitable to hold that employment on an arbitrary date is a condition precedent to the vesting of the right to such pay.'" *Golden Bear*, 494 N.E.2d at 589 (quoting *Suastez v. Plastic Dress-Up Co.*, 647 P.2d 122, 127 (Cal. 1982)). The KSI Vacation Benefit Plan's requirement that employees be actively employed in December in order to receive the vacation benefit payment is indistinguishable from the condition held to violate Section 5 of the IWPCA in *Golden Bear*.

Defendant relies on *Kiefer v. Paul Krone Diecasting Co.*, 1988 WL 116589 (N.D. Ill. Oct. 24, 1988), an unreported and never-since-cited decision for its argument that how vacation time is deemed earned or vested under the Act is determined strictly on the basis of the terms of the employment contract or agreement. The Court is persuaded that *Golden Bear's* interpretation of the IWPCA is still good law, even though Section 5 of the IWPCA was amended after *Golden Bear*. Prior to January 1, 1984, Section 5 of the IWPCA provided:

> Whenever a contract of employment or
> employment policy provides for paid vacations,
> and an employee resigns or is terminated
> without having taken all of his earned
> vacation time, all earned vacation shall be
> paid to him as final compensation at his final
> rate of pay in accordance with such contract
> of employment or employer policy respecting
> eligibility or time served; provided, however,
> that an employment contract or employer policy
> shall not provide for forfeiture of earned
> vacation time upon separation.

820 ILCS 115/5 (1983). Currently, Section 5 provides:

> [u]nless otherwise provided in a collective
> bargaining agreement, whenever a contract of
> employment or employment policy provides for
> paid vacations, and an employee resigns or is
> terminated without having taken all vacation
> time earned in accordance with such contract
> of employment or employment policy, the
> monetary equivalent of all earned vacation
> shall be paid to him or her as part of his or
> her final compensation at his or her final
> rate of pay and no employment contract or
> employment policy shall provide for forfeiture
> of earned vacation time upon separation.

820 ILCS 115/5 (2007). The Court sees no material difference
between the version of Section 5 in force when *Golden Bear* was
decided and the current Section 5: both provide that earned
vacation shall be paid to employees, in accordance with the
employment contract or agreement, and that no employment contract
or policy shall provide for forfeiture of earned vacation.

Defendant's interpretation of the amended IWPCA was rejected
by an Illinois appellate court in *Mueller Co.*, 543 N.E.2d at
520-21. That court reaffirmed *Golden Bear*'s holding that "a

vacation plan where the employee did not earn vacation benefits *pro rata* was contrary to the forfeiture clause of section 5 of the Act," *id.* at 520, and held:

> [W]e do not find the amendment of the Act materially altered its effect when considered as a whole. The primary objective of the Act is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits. To follow the interpretation urged by the plaintiff would allow any employer to negate the protection provided by the Act simply by varying the terms of its employment policy or contract. . . . the amendment was intended merely to clarify the language of the Act and no retreat from the substantive protections of the prior Act was intended.

*Id.* at 521. Since the Illinois Supreme Court has not spoken on this issue, and this Court has no indication that it would rule differently, this Court gives great weight to the determination of the Illinois appellate court in *Mueller Co*. *See Pisciotta v. Old Nat. Bancorp*, --- F.3d ---, 2007 WL 2389770, at *4 (7th Cir. Aug. 23, 2007).

Finally, the Court is unpersuaded by Defendant's argument that its vacation benefit payment is a bonus to which Plaintiffs are not entitled because the plan does not unequivocally confer such a benefit. First, KSI's Vacation Benefit Plan does unequivocally confer a vacation benefit payment once the service requirements are met; the policy states that "[a] vacation benefit payment *will be*

*issued automatically* in January of the following year." Def.'s Mem., Ex. A (emphasis added). The cases Defendant cites are inapposite. *See In re Comdisco, Inc.*, No. 02 C 7030, 02 C 7031, 2003 WL 685645 (N.D. Ill. Feb. 27, 2003) (incentive plan contained a "no vested rights provision" that explicitly disclaimed any vesting until payment); *Tatom v. Ameritech Corp.*, No. 99 C 683, 2000 WL 1648931 (N.D. Ill. Sept. 27, 2000) (compensation plan did not unequivocally provide a bonus each year and explicitly disclaimed any guarantee of any particular compensation); *Byker v. Sequent Computer Systems, Inc.*, No. 96 C 2297, 1997 WL 639045 (N.D. Ill. Sept. 29, 1997) (company policy did not provide for the payout of the cash value of a sales club bonus trip); *Wilson v. LaSalle Mfg. & Mach. Co.*, 374 N.E.2d 30 (Ill. App. Ct. 1978) (breach of contract action not brought under the IWPCA).

Third, even if the vacation benefit payment is deemed a bonus, the IWPCA provides that earned bonuses, like earned vacation, are earned pro rata. *Camillo v. Wal-Mart Stores, Inc.*, 582 N.E.2d 729, 734 (Ill. App. Ct. 1991) ("Applying the principles set forth in *Golden Bear* and *Kulins* [*v. Malco, a Microdot Co., Inc.*, 459 N.E.2d 1038 (Ill. App. Ct. 1984)] to the case at bar, we find that 'earned vacation' and 'earned bonus' should be interpreted similarly and that the proper interpretation is that, with a bonus such as the one in question, the employee earns the bonus *pro rata* just as he

earns vacation pay *pro rata*.").  In *Camillo*, the court held that Wal-mart's policy that forfeited plaintiff's bonus unless he was employed on a specific date violated the IWPCA.  *Id.* at 734-35.

Defendant cites one case, *Heaton v. Sears, Roebuck & Co.*, No. 05 C 1321, 2006 WL 2494753 (N.D. Ill. Aug. 24, 2006), in support of its argument that its policy's disclaimer ("[t]he Vacation Benefit Plan may be cancelled or modified at any time at the discretion of Kelly Services") defeats Plaintiffs' entitlement to the vacation benefit payment.  But the *Heaton* court's holding that the plaintiff was not entitled to a bonus payment did not rest on a similar provision in Sears' bonus policy ("measures . . . may also be amended or terminated at any time at the company's sole discretion"); it rested on the facts that the policy did not unequivocally state that employees are paid a bonus each year, it provided a specific disclaimer preventing emergence of a contract or agreement, and it provided that the bonus may be withheld from employees terminated for dishonest or unethical conduct (such as Heaton).  In any case, *Heaton* was subsequently amended to remove discussion of the IWPCA claim.  *See Heaton*, 2006 WL 3267679, *6 (N.D. Ill. Nov. 8, 2006) (dismissing the state law claims for lack of pendent jurisdiction).

In sum, Plaintiffs have stated a valid claim for vacation pay under the IWPCA.

## B. Holiday Pay Claim Under the IWPCA

The Court rejects Defendant's characterization of Plaintiffs' holiday pay claim. Plaintiffs do not allege that holiday pay is earned or vested pro rata under the IWPCA. Rather, they clearly allege that they met the requirements necessary to qualify for a holiday benefit payment under KSI's Holiday Benefit Plan and were denied their earned holiday pay. *See* Compl. ¶¶ 22, 24, 36-39. Moreover, Defendant cites no cases supporting its argument that the IWPCA does not provide for pro rata accrual of earned holiday pay, and the Court has found none. Finally, Defendant's argument that its Holiday Benefit Plan provides employees with only days off but no monetary benefits, *see* Def.'s Mem. at 11; Def.'s Reply at 8, contradicts the clear terms of the plan, which indicate that employees receive days off with pay: "You may be eligible for as many as six *paid* holidays per year. . . . To qualify for a holiday benefit *payment*, you must meet all the following requirements. . . . A holiday benefit *payment* will be issued automatically the week following the holiday. It will be equivalent to eight hours to your current pay rate." Def.'s Mem., Ex. B (emphasis added).

In sum, Plaintiffs have stated a valid claim for holiday pay under the IWPCA.

### C. Whether Plaintiffs May Recover Liquidated Damages Under the IDTLSA for Violations of the IWPCA

In their prayers for relief under Counts I and II, Plaintiffs request, in relevant part, that the Court award liquidated damages equal to the amount of unpaid vacation and holiday pay due since January 1, 2006, "as provided by the IDTLSA, 820 ILCS 175/95(a)(1)." Compl. ¶¶ 33(G), 39(F). Section 95 of the IDTLSA provides:

> (a) . . . A day or temporary laborer whose rights have been violated under this Act by a day and temporary labor service agency or a third party client is entitled to collect:
>
> > (1) in the case of a wage and hour violation, the amount of any wages, salary, employment benefits, or other compensation denied or lost to the day or temporary laborer by reason of the violation, plus an equal amount in liquidated damages; . . . .

820 ILCS 175/95(a)(1). The IDTLSA does not define "wage and hour violation" or the terms "wages," "salary," "employment benefits," or "other compensation." *See* 820 ILCS 175/5. The IWPCA, however, does define "wages" and "final compensation." *See* 820 ILCS 115/2.

Defendant contends that the phrase "wage and hour violation" in 820 ILCS 175/95(a)(1) does not refer to or incorporate any statutory violations other than those provided for in the IDTLSA, and the IDTLSA does not require employers to pay earned vacation and holidays as final compensation. Rather, Defendant argues,

those violations are separately addressed in the IWPCA, which does not provide for liquidated damages. Plaintiffs contend that the IDTLSA incorporates the IWPCA's requirement that all wages be timely paid, and therefore, failure to pay earned vacation and holiday pay would entitle laborers to obtain liquidated damages and other remedies under Section 95(a)(2).

The question here is whether the denial of earned vacation and holiday pay is a violation under the IDTLSA, since Section 95(a)(1) provides for liquidated damages for wage and hour violations "under this Act." No court has interpreted the IDTLSA, either alone or in relation to other Illinois labor laws such as the IWPCA. This Court must predict how the Supreme Court of Illinois would decide the issue. *Pisciotta*, --- F.3d ---, 2007 WL 2389770, *4. "The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent." *Moore v. Green*, 848 N.E.2d 1015, 1021 (Ill. 2006).

As an initial matter, the Court is not persuaded that the statute itself contains any provisions incorporating the earned vacation and holiday pay provisions of the IWPCA into the IDTLSA. Plaintiffs and the Illinois Department of Labor (as Intervenor) point to Section 30(c) of the IDTLSA, but that provision provides only that the manner in which wages must be paid - by direct deposit or other approved manner - can be "designated by the day or temporary laborer in accordance with the Illinois Wage Payment and

Collection Act," at the day or temporary laborer's request. 820 ILCS 175/30(c). This provision does not incorporate the wage and hour provisions of the IWPCA wholesale into the IDTLSA.

However, the Illinois Department of Labor has promulgated regulations titled "Wage Payment and Notice" and "Wage Payments and Legal Responsibility" pursuant to the IDTLSA that state, "All wage payments must be in compliance with all laws relating to wages contained in 820 ILCS," Ill. Admin. Code, tit. 56, § 260.450(c), and, "All wage payments must be in compliance with all laws relating to wages contained in 820 ILCS. Third-party clients that contract with day and temporary labor service agencies for the services of day or temporary laborers shall share with the day and temporary labor service agency all legal liability and responsibility for the payment of wages," *id.* § 260.500. Plaintiffs and the Department of Labor argue that under these regulations, a "wage and hour violation" "under this Act [the IDTLSA]," 820 ILCS 175/95(a)(1), would include violations of the vacation and holiday pay provisions of the IWPCA, and Plaintiffs have thus stated a valid claim for liquidated damages under Counts I and II of their complaint.

The Department of Labor is the state agency charged with enforcing and promulgating rules under the IDTLSA and the IWPCA. *See* 820 ILCS 175/55; 820 ILCS 115/11. "Where the legislature expressly or implicitly delegates to an agency the authority to

clarify and define a specific statutory provision, administrative interpretations of such statutory provisions should be given substantial weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Church v. State*, 646 N.E.2d 572, 577 (Ill. 1995) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)); *see also People ex rel. Dept. of Labor v. MCC Home Health Care, Inc.*, 790 N.E.2d 38, 45-46 (Ill. App. Ct. 2003) ("Our law is clear that administrative regulations, while not binding, are entitled to enhanced acknowledgment and respect from our courts.").

Defendant argues that a "wage and hour violation" under the IDTLSA includes only the wage and hour violations specifically enumerated in the IDTLSA (such as failing to compensate a temporary employee for a minimum of four hours if the employee is contracted to work at a third party client's work site but is not utilized by that client, 820 ILCS 175/30(g)). While the Court agrees that liquidated damages are certainly available for those violations, the statute is ambiguous as to whether a "wage and hour violation" under the IDTLSA also includes wage and hour violations under 820 ILCS generally, and the Department of Labor's interpretation of the statute is reasonable. This Court "will not substitute its own construction of a statutory provision for a reasonable interpretation adopted by the agency charged with the statute's administration." *Church*, 646 N.E.2d at 577; *see also Golden Bear*,

494 N.E.2d at 588 (noting that "an administrative agency's interpretation of a statute . . . expresses an informed source for ascertaining the legislative intent," and deferring to the Department of Labor's interpretation of the IWPCA).

The Court is also persuaded that the legislature intended to provide for the remedy of liquidated damages only for day and temporary laborers and not for other Illinois workers. *Cf.* Def.'s Reply at 11 (citing *Ortegon v. Staffing Network Holdings, LLC*, No. 06 C 4053, 2007 WL 541911, at *2 (N.D. Ill. Feb. 15, 2007) (declining to exercise supplemental jurisdiction over claims that violations of the IWPCA and the Illinois Minimum Wage Law are incorporated into the IDTLSA, given that no Illinois court has examined the issue). In enacting the IDTLSA, the legislature found:

> Recent studies and a survey of low-wage day or temporary laborers themselves finds that as a group, *they are particularly vulnerable to abuse of their labor rights, including unpaid wages, failure to pay for all hours worked*, minimum wage and overtime violations, and unlawful deductions from pay for meals, transportation, equipment and other items.
>
> *Current law is inadequate to protect the labor and employment rights* of these workers.

820 ILCS 175/2 (emphasis added). These findings indicate the legislature's intent to provide extra protections and remedies for day and temporary laborers precisely because they are more vulnerable to abuse than other workers.

In sum, Plaintiffs have stated a valid claim for remedies under 820 ILCS 175/95(a) for violations of the IWPCA.

### D. Constitutionality of Penalties Under Section 92(a)(2) of the IDTLSA

Section 95(a)(2) of the IDTLSA provides that a day or temporary laborer whose rights have been violated under the Act is entitled to collect "in the case of a health and safety or notice violation, compensatory damages and an amount up to $500 for the violation of each subpart of each Section." 820 ILCS 175/95(a)(2). In Count III of their complaint, Plaintiffs allege that KSI violated the IDTLSA by failing to provide Plaintiff Arrez with Wage Payment and Notice as required under 820 ILCS 175/30. Compl. ¶¶ 40-43. Plaintiffs request, among other things, compensatory damages and the statutory penalty pursuant to Section 95(a)(2). *See* Compl. ¶ 43(E). KSI argues that Section 95(a)(2) is unconstitutional because it is grossly disproportionate and sets no standards for the issuance of penalties.

The Court holds that 820 ILCS 95(a)(2) is not unconstitutional. Defendant relies on due process cases involving punitive damages such as *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), and *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), but those cases are not relevant to statutory penalties. *See, U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, 488 F.Supp.2d 719, 748 (N.D. Ill. 2007) (quoting *Phillips Randolph*

*Enterprises, LLC v. Rice Fields*, 2007 WL 129052, *2 (N.D. Ill. Jan. 11, 2007) ("considerations pertinent to the validity of jury awards are not the same as those attendant to damage amounts set by statutes"); *see also Express Valet, Inc. v. City of Chicago*, 869 N.E.2d 964, 981-82 (Ill. App. Ct. 2007) ("concerns over the imprecise nature of punitive damages are not present in this case . . . [t]he penalties imposed on petitioners in this case were statutorily created and clearly provide notice of the range of fines that could be imposed for violations of the Code.").

Rather, a statutory penalty violates due process "only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919). In determining whether the penalty is grossly disproportionate, "the fine need only bear some relationship to the offense's gravity; this is not a proportionality inquiry." *U.S. ex rel. Tyson*, 488 F.Supp.2d at 744. Section 95(a)(2)'s "up to $500" penalty per violation clearly bears a reasonable relationship to the harms that the legislature sought to deter in enacting the IDTLSA. The legislature found that day and temporary laborers are "particularly vulnerable to abuse of their labor rights," including the right to be paid for all hours worked and the right to be paid the minimum wage. Requiring day and temporary labor service agencies to provide laborers with proper wage payment and notice

helps deter abuse of the laborers by giving them documentation of their place of work, hours worked, rate of pay, any deductions for meals or transportation, etc.  "Though the amount of damages could become very high if the statute is violated numerous times, as in the context of a class action," the purpose of the statute is to protect the rights of day and temporary laborers, and "[t]he statute accomplishes that purpose by making the [violations of those rights] prohibitively expensive, which is an acceptable means of accomplishing the statute's goal of deterrence."  *Phillips Randolph Enterprises,* 2007 WL 129052, at *3.  Defendant's position is particularly untenable because by raising this issue in a motion to dismiss - before any violations have been found and penalties assessed against it - it essentially urges this Court to find Section 95(a)(2) unconstitutional on its face.  The Court cannot find that there are no circumstances under which application of the "up to $500" penalty would be constitutional.

Defendant has cited no case law, and the Court has found none, for its argument that Section 95(a)(2) is unconstitutionally vague and arbitrary because a court could assess any amount "up to $500" for each violation.  Countless state and federal laws provide for similarly structured penalties, and they have been upheld against due process challenges.  *See, e.g., Express Valet, Inc.*, 869 N.E.2d 964; *U.S. ex rel. Tyson*, 488 F.Supp.2d 719; *Herrera v. Singh*, 103

F.Supp.2d 1244 (E.D. Wash. 2000); *Texas v. American Blastifax, Inc.*, 121 F.Supp.2d 1085 (W.D. Tex. 2000).

Finally, that Section 70 of the IDTLSA provides a "civil penalty not to exceed $6,000 for violations found in the first audit by the Department [of Labor]" shows only that the legislature intended a cap of $6,000 for violations in actions brought by the Department of Labor. *See* 820 ILCS 175/70(a). In contrast, Section 95 of the IDTLSA provides a private right of action and sets forth different remedies, including liquidated damages and attorneys' fees. *See* 820 ILCS 175/95(a).

In sum, Section 95(a)(2) of the IDTLSA is not unconstitutional.

### III. CONCLUSION

For the reasons stated herein, the Defendant's Motion to Dismiss is **DENIED.**

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 10/29/2007

- 24 -